UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRBIS MONRROY, A-215-557-446,<br>Petitioner,<br>v.<br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY,<br>Respondent. | No. 1:26-cv-02092-TLN-EFB (HC)<br><br>ORDER (ECF No. 11) and FINDINGS AND RECOMMENDATIONS (ECF No. 13) |

Petitioner is a noncitizen alien detained in an immigration detention facility who has brought a petition for writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1. This matter was referred to the undersigned pursuant to Local Rule 302(c)(17). ECF No. 4. For the reasons set forth below, the undersigned recommends the writ be granted.

**BACKGROUND**

**A. Factual Background**

In his amended petition for writ of habeas corpus, petitioner alleges that he is a citizen and national of El Salvador who is currently detained by respondents pending immigration removal proceedings. ECF No. 13-1 ¶ 12. He alleges that he entered the United States in, approximately, August 2003, when he was fourteen years old. *Id.* ¶ 18. On an unknown date, petitioner pled guilty to a charge of breach of peace in a Connecticut Superior Court and was sentenced to a six-month suspended sentence and placed on probation. *Id.* ¶ 22. He subsequently violated probation

and served a 165-day sentence in a Connecticut correctional facility. *Id.* ¶¶ 21-22. He was released on January 9, 2026, and, the same day, was taken into custody by the Department of Homeland Security (DHS). *Id.* ¶ 21. Since that time, he has not been given a bond hearing. *Id.* ¶ 31. His removal proceedings are pending, and a final order of removal has not yet issued. *Id.* ¶¶ 2, 4; *see also* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (accessed July 18, 2026).[1]

In his answer, respondent does not dispute petitioner's factual allegations. Respondent additionally represents that petitioner has a greater criminal history than referenced in his amended petition. Per respondent, petitioner was convicted of disorderly conduct on July 28, 2020, in Connecticut, and was sentenced to five days in jail. ECF No. 15 at 2 & Exs. 2, 3. On December 16, 2020, petitioner was convicted, in Connecticut, of two counts of second-degree criminal mischief, and given a 360-day suspended sentence, with 18 months of probation on one count and execution of sentence on the second count discharged. ECF No. 15 at 2. On July 5, 2023, petitioner was convicted, in Connecticut, of third-degree criminal trespass and was sentenced to sixty days in jail, execution of sentence suspended, with one-year conditional discharge. *Id.* On August 2, 2024, petitioner was convicted, in Connecticut, of third-degree assault, first-degree criminal trespass, and public indecency. *Id.* On the assault count, the court sentenced petitioner to 364 days in jail, execution of sentence suspended, with two years of probation. *Id.* On the criminal trespass count, the court sentenced petitioner to 364 days in jail, execution suspended, with two years of probation, to run concurrently with his sentence on the other counts. *Id.* On the public indecency count, the court sentenced petitioner to six months in jail, execution of sentence suspended, with two years of probation, to be served concurrently with his other sentences. On November 19, 2024, petitioner was convicted, in Connecticut, of violating the conditions of supervised release and sentenced him to eleven months in jail,

---

[1] The court takes judicial notice of the EOIR's case information available on its website, pursuant to Federal Rule of Evidence 201. *See Reyn's Pasta Bella, LLC, v. Visa USA Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953).

execution of sentence suspended, with 2 years of probation. *Id.* On September 16, 2025, petitioner was convicted, in Connecticut, of second-degree physical threats and violation of probation, and sentence to 165 days in jail on each count, to run concurrently. *Id.* On October 14, 2025, petitioner was convicted of violation of probation and sentenced to ninety days in jail, to run concurrently to the sentence imposed on September 16, 2025). *Id.* at 3.

Respondent agrees that, on January 9, 2026, the Connecticut Department of Corrections released petitioner into the custody of DHS officers who arrested petitioner. ECF No. 15 at 3. Per respondent, petitioner's arrest occurred pursuant to an administrative warrant. *Id.* at 3 & Exs. 1, 4 . After petitioner was arrested, DHS agents served on him a Notice to Appear, charging him with removability under 8 USC § 1182(a)(6)(A)(i) of the Immigration and Nationality Act. *Id.* at 3 & Ex. 5.

In his traverse, petitioner does not dispute respondent's factual representations. ECF No. 16.

**B. Procedural Background**

Petitioner initiated this action in propria persona on March 16, 2026. ECF No. 1. On March 18, 2026, the District Judge referred the matter to the undersigned. ECF No. 4. The following day, the undersigned appointed counsel for petitioner. ECF No. 6. On March 30, 2026, petitioner moved to proceed in forma pauperis. ECF No. 11. Respondent filed a response on April 2, 2026. ECF No. 12. On April 3, 2026, petitioner, through counsel, filed an amended petition, with leave of court. ECF Nos. 13, 14. Respondent filed an answer to the amended petition, on April 21, 2026, ECF No. 15, and, the following day, petitioner filed a traverse. ECF No. 16. On July 18, 2026, petitioner filed a supplement to his amended petition. ECF No. 17.

**C. Motion to Proceed In Forma Pauperis**

Examination of petitioner's application to proceed in forma pauperis, ECF No. 11, reveals that he is unable to afford the costs of suit. is granted. Accordingly, the application is granted. *See* 28 U.S.C. § 1915(a).

////

////

## LEGAL STANDARD

The federal court should grant a writ of habeas corpus under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or federal law. *See, e.g., Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018). The petitioner bears the burden to prove the unlawfulness of his detention by a preponderance of evidence. *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025).

## DISCUSSION

Petitioner raises four claims for relief. First, he alleges that his present detention violates the Immigration and Nationality Act (INA) because he is wrongfully detained pursuant to 8 U.S.C. § 1225(b), and, in his second claim, he alleges that his detention violates the INA to the extent he is detained pursuant to 8 U.S.C. § 1226(c). ECF No. 13-1 ¶¶ 42-57. His third claim alleges that his ongoing detention without a bond hearing violates his rights to due process under the Fifth Amendment. *Id.* ¶¶ 58-66. In his fourth claim, he argues that habeas corpus relief is necessary because administrative remedies are unavailable. *Id.* ¶¶ 67-73. Petitioner seeks declaratory relief; injunctive relief ordering his immediate release or, alternatively, a bond hearing; and attorney fees and costs. *Id.* ¶¶ at 11.

Respondents argue that petitioner's claims are meritless and that petitioner's present detention is lawful under the INA and the Due Process Clause. ECF No. 15 at 4-8. The undersigned finds petitioner has demonstrated his entitlement to relief on his claims and recommends the writ be granted.

### 1. Claims One and Two: Violation of the Immigration and Nationality Act

In Claims One and Two, petitioner alleges that his present detention is in violation of the INA because he is not lawfully subject to the detention provisions codified at 8 U.S.C. § 1225(b) or § 1226(c), respectively. The undersigned finds that petitioner has demonstrated his entitlement to habeas corpus relief on both claims.

////

////

////

**A. Claim One: Application of 8 U.S.C. § 1225(b) to Petitioner**

Sections 1225 and 1226 of the INA, 8 U.S.C. §§ 1225, 1226, govern the detention of inadmissible noncitizens who have been placed in removal proceedings, but for whom a final order of removal has not issue. Under § 1226(a), during the pendency of removal proceedings, the Government has discretion to release the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B). Specifically, a DHS officer makes an initial custody determination and may release the noncitizen upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). The noncitizen may seek review of this custody decision by an Immigration Judge. *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Section 1225 of the INA, in contrast, provides for mandatory detention of certain noncitizens and, in some cases, expedited removal. 8 U.S.C. § 1225; *Jennings*, 583 U.S. at 303.

Here, petitioner alleges that respondent has detained him pursuant to 8 U.S.C. § 1225(b)(2)(A), which is unlawful because § 1226(a) properly applies to him. ECF No. 1 ¶¶ 27-30, 46-48. Respondent argues that petitioner is an "applicant for admission," within the meaning of § 1225(b)(2)(A), subjecting him to the mandatory detention provision of that section. ECF No. 15 at 7-8. Respondent's position is unpersuasive. As numerous courts have already concluded, respondents' argument fails as a matter of statutory construction. *See Rugama v. Chestnut*, No. 1:25-CV-1918 AC, 2025 WL 3707234, at *3 (E.D. Cal. Dec. 22, 2025) (collecting cases). Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). Respondent's position is that "applicant for admission" and "an alien seeking admission" both be interpreted to include persons like petitioner, who have entered in the United States and have resided in the interior United States for a considerable length of time, at the time they were taken into detention. *See* ECF No. 15 at 7-8. This interpretation is untenable, however, because it "(1) disregards the plain meaning of [§] 1225(b)(2)(A); (2) disregards the relationship between [§§]

1225 and 1226; (3) would render a recent amendment to [§] 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025); *see also Tinoco v. Noem*, 818 F. Supp. 3d 1141, 1150-52 (E.D. Cal. 2025); *Labrador-Prato v. Noem*, 815 F. Supp. 3d 1113, 1120-21 (E.D. Cal. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487-91 (S.D.N.Y. 2025); *D. L.C. v. Wofford*, No. 1:25-CV-01996-DC-JDP (HC), 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026). Instead, because petitioner had already been living in the United States for many years at the time of his January 2026 arrest, 8 U.S.C. § 1226(a), rather than § 1225(b), properly applies to him. *See Tinoco*, 818 F. Supp. 3d at 1150.

For these reasons, petitioner has shown that his present detention is governed by 8 U.S.C. § 1226(a), such that respondents have violated the Immigration and Nationality Act to the extent that they have detained him, or are presently detaining him, pursuant to 8 U.S.C. § 1225(b). The undersigned recommends, therefore, that relief be granted on Claim One of the amended petition.

**B. Claim Two: Application of 8 U.S.C. § 1226(c)(1)(A) to Petitioner**

Respondent alternatively argues that petitioner is lawfully detained under 8 U.S.C. § 1226(c)(1)(A), because he is inadmissible under 8 U.S.C. § 1182(a)(2)(B). ECF No. 15 at 4-6. The undersigned finds that petitioner has demonstrated that this section does not authorize his detention, and he is entitled to habeas corpus relief on this claim, as well.

Under 8 U.S.C. § 1226(c)(1)(A), provides that detention pending removal is mandatory for any alien who is inadmissible pursuant to 8 U.S.C. § 1182(a)(2). The latter section provides, inter alia,

> Any alien convicted of 2 or more offenses (other than purely political offenses), regardless of whether the conviction was in a single trial or whether the offenses arose from a single scheme of misconduct and regardless of whether the offenses involved moral turpitude, for which the aggregate sentences to confinement were 5 years or more is inadmissible.

8 U.S.C. § 1182(a)(2)(B). The "sentences to confinement" referenced therein refers to the period of confinement ordered by the court, even if imposition or execution of the sentence was ordered suspended. 8 U.S.C. § 1101(48)(B).

////

Here, respondent argues that petitioner satisfies the definition of inadmissibility in 8 U.S.C. § 1182(a)(2)(B) because he has suffered multiple, non-political criminal convictions whose custodial sentences aggregate to more than five years. ECF No. 15 at 4-6. Petitioner concedes that he has suffered the convictions and sentences cited by respondent, *see* ECF No. 16, but counters that his concurrent sentences should not be aggregated and, when properly aggregated, his total custodial sentences are less than five years. ECF No. 16 at 3-4. The relevant regulations are silent on this issue, *see* 22 C.F.R. § 40.22, and, to the undersigned's knowledge, neither the Court of Appeals nor Supreme Court determined the question. The Board of Immigration Appeals, however, has consistently held that, "[w]hen a court orders sentences to run concurrently, only the largest of the sentences should be counted to determine the aggregate sentence under section 212(a)(2)(B) of the Act," i.e., 8 U.S.C. § 1182(a)(2)(B). *Matter of J-A-V*, 2016 WL 3519957, at *3 (BIA 2016); *see, e.g.*, *Matter of M-E-R*, 2018 WL 6124764, at *6 (BIA 2018); *Matter of J-L-M*, 2016 WL 6137912, at *4 (BIA 2016); *In Re Aldabesheh*, 22 I. & N. Dec. 983, 988 (BIA 1999); *Matter of Fernandez,* 14 I&N Dec. 24, 25 (BIA 1972). This interpretation is consistent with the plain language of the statute, which aggregates only the "sentences to confinement," 8 U.S.C. § 1182(a)(2)(B), which are "the period of incarceration or confinement ordered by a court of law." 8 U.S.C.A. § 1101(48)(B). Where a judge orders sentences to run consecutively, the "period of confinement . . . ordered by" the court is, by its plain language, the total custodial period of all consecutive sentences. In contrast, where a judge sentences a defendant to concurrent sentences, the "period of confinement" will only be the longest sentences of all of the concurrent sentences.

This plain-language interpretation is also consistent with the Supreme Court's approach to construing the Sixth Amendment in criminal cases. The Court has held that, if a sentencing judge imposes concurrent sentences, the period of incarceration ordered by the sentencing court—i.e., the custodial sentence actually imposed by the court—is considered to be only the longest of sentences ordered to run concurrently; in contrast, if the sentencing court orders sentences to run consecutively, the "penalty actually imposed" is the aggregate of all the consecutive sentences, such that the right to a jury trial under the Sixth Amendment may attach. *Taylor v. Hayes*, 418

U.S. 488, 495 (1974); *see also Codispoti v. Pennsylvania*, 418 U.S. 506, 516 (1974); *Maita v. Whitmore*, 508 F.2d 143, 145 (9th Cir. 1974); *cf. Lewis v. United States*, 518 U.S. 322, 328 (1996) (referring to the "punishment actually imposed" by the sentencing judge as reflecting whether the judge ordered multiple sentences to run concurrently or consecutively). Respondent cites no authority for the contrary construction that he urges. *See* ECF No. 15.

When aggregated such that concurrently-ordered sentences are measured by the length of the longest sentence, petitioner's total period of incarceration to which he has been sentenced aggregates to less than five years. *See* ECF No. 15 at 1-3. Accordingly, petitioner has shown that he is not inadmissible under 8 U.S.C. § 1182(a)(2)(B), as asserted by respondent, and therefore that his detention is not mandated under 8 U.S.C. § 1226(c)(1)(A), as claimed by respondent. Petitioner has thus demonstrated his entitlement to relief on Claim Two of his amended petition.

**2. Claim Three: Violation of Right to Due Process**

Petitioner has also demonstrated, in Claim Three, that his ongoing detention without a bond hearing violates his rights to due process under the Fifth Amendment, and he is entitled to habeas corpus relief on this basis, as well. *See* ECF No. 13-1 ¶¶ 58-66.

The Due Process Clause of the Fifth Amendment protects persons in the United States from being deprived of life, liberty, or property without due process of law. Noncitizens subject to mandatory detention are not without due process rights. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1091-93 (E.D. Cal. 2025) (finding a liberty interest for a petitioner under § 1225(b)(1)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Courts examine procedural due process claims in two steps. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The first step asks whether a protected liberty or property interest exists, and the second step examines the constitutional adequacy of the procedures employed by the State to interfere with that interest. *Id*. Here, at the first step, it is

unquestionable that petitioner has a liberty interest that is cognizable under the due process clause. *See*, *e.g*., *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Having found petitioner possesses a cognizable liberty interest, the court turns to the second step of the analysis, to determine whether detention violates a petitioner's Fifth Amendment procedural due process rights and the amount of process a petitioner is due. In making this determination, courts weigh: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge. See* 424 U.S. 319, 335 (1976). Here, petitioner has shown that he has a substantial interest in his freedom from detention, relative to the first factor. Since petitioner's entry to the United States many years ago, he necessarily has developed "enduring attachments of normal life," including family connections, legally indistinguishable from those experienced by a criminal parolee. *See* ECF No. 13-1 ¶¶ 19-20; *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Doe*, 787 F. Supp. 3d at 1094; *Tinoco,* 818 F. Supp. 3d at 1152.

Petitioner also has demonstrated that the second *Mathews* factor weighs in his favor. Without an individualized bond hearing, "the risk of erroneous deprivation," *see Mathews*, 424 U.S. at 335, through petitioner's summary detention is considerable. Petitioner's detention is only justified if he poses a flight risk or a danger to the community or to national security. *See* 8 U.S.C. § 1226(a); *Zadvydas*, 533 U.S. at 690. Without an individualized bond determination by a neutral factfinder in order to determine whether his continued detention is legally justified, the risk of erroneous deprivation of petitioner's protected liberty interests is great. *See Tinoco,* 818 F. Supp. 3d at 1152; *Labrador-Prato*, 815 F. Supp. 3d at 1121; *see also Demore*, 538 U.S. 510; *Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025); *A.E. v.*

*Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Correspondingly, the probative value of the additional procedural safeguards petitioner seeks—a determination of petitioner's bond-worthiness based on individualized facts, by a neutral factfinder—is high. *See Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4. Here, respondents represent that petitioner's detention is justified by his being a danger to the community, ECF No. 15, but petitioner disputes this. ECF No. 16. This dispute demonstrates the great probative value of a determination of petitioner's bond-worthiness based on individualized facts by a neutral factfinder, consistent with the regulations attendant to § 1226(a). *See Tinoco*, 818 F. Supp. 3d at 1150; *Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4.

Petitioner also has shown that the third *Mathews* factor weighs in his favor. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The effort and cost required to provide petitioner with procedural safeguards are minimal. *See Tinoco,* 818 F. Supp. 3d at 1152-52; *Labrador-Prato*, 815 F. Supp. 3d at 1122 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government."). "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without [any procedural protections] is low." *Ortega*, 415 F. Supp. 3d at 970; *see also Tinoco*, 818 F. Supp. 3d at 1153 (quoting same).

Accordingly, the undersigned finds respondents' interest in detaining petitioner without an individualized bond determination, at a hearing before a neutral factfinder, is low and does not outweigh petitioner's substantial liberty interest or the risk of the erroneous deprivation of same. Petitioner has thereby shown by a preponderance of evidence that his detention without a bond hearing in accordance with 8 U.S.C. § 1226(a) violates his rights under the Due Process Clause of the Fifth Amendment, entitling him to habeas corpus relief.

////

**3. Exhaustion**

Finally, respondent argues the petition should be denied because petitioner has failed to exhaust administrative remedies, ECF No. 15 at 4-8, while petitioner argues that exhaustion should not be required because it would be futile. ECF No. 13-1 ¶¶ 67-73.

The exhaustion doctrine requires a petitioner to pursue available administrative remedies prior to seeking judicial relief. *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50-51 (1938); *S.E.C. v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981). A petitioner seeking habeas corpus relief under 28 U.S.C. § 2241 is not statutorily required to exhaust his claims, but the Court of Appeals has held that exhaustion should be generally required in such actions as a prudential matter. *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). Where prudential exhaustion is typically required, the court may nevertheless waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture [or] irreparable injury will result." *S.E.C.*, 637 F.2d at 688 n.4.

Here, petitioner has shown that the prudential exhaustion requirement should be waived. As the court has held under similar facts, waiver is appropriate here "to avoid further irreparable harm to Petitioner and further delay in vindicating his constitutional rights," given that "Petitioner is suffering irreparable harm as a result of his continued detention, which would unnecessarily continue without waiver of exhaustion." *Victor B.P. v. Warden*, No. 1:26-CV-03736-TLN-CSK, 2026 WL 1493987, at *2 (E.D. Cal. May 27, 2026) (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025)). Moreover, given that respondent takes the position in this proceeding that petitioner is subject to mandatory detention under § 1226(c), exhaustion would be futile. *See Rene Leonel G.O. v. Warden of the California City Det. Facility*, No. 2:26-CV-00733-TLN-SCR, 2026 WL 1219698, at *2 (E.D. Cal. May 5, 2026). Accordingly, the undersigned recommends that the court excuse petitioner's failure to exhaust administrative remedies.[2]

////

---

[2] Because the undersigned recommends the amended petition be granted on the causes of action alleged therein, *see* ECF No. 13-1, in the interest of judicial economy, the undersigned does not reach petitioner's supplemental allegations raised in his supplemental filing. *See* ECF No. 17.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that petitioner's motion to proceed in forma pauperis (ECF No. 11) is granted.

IT IS HEREBY RECOMMENDED that:

1) Petitioner's amended petition for writ of habeas corpus (ECF No. 13-1) be GRANTED as follows:

   a. Respondent be ORDERED to provide Petitioner Irbis Monrroy (A-215-557-446), within seven (7) days, a bond hearing before an Immigration Judge pursuant to 8 C.F.R. § 1236.1(c)(8) at which Petitioner shall bear the burden of showing that he is not a flight risk or a risk to community safety; and

   b. If Respondent fails to provide Petitioner a bond hearing within seven (7) days, Petitioner shall be immediately released from Respondent's custody;

2) Petitioner's request for attorney fees and costs be denied without prejudice to bringing a properly noticed and supported motion;

3) The Clerk of Court be directed to serve the District Court's order on the Golden State Annex; and

4) Judgment be entered in favor of petitioner and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven (7) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 30, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE